**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LADALE AIROSTEVE HOLLOWAY**                                                    **PLAINTIFF**

**VERSUS**                                                   **CIVIL ACTION NO. 1:12cv60-JMR**

**SHERIFF MELVIN BRISOLARA,** *et. al*                                        **DEFENDANTS**

### MEMORANDUM OPINION

This matter is before the Court on the motion of the Defendants, Sheriff Melvin Brisolara [Brisolara], Donald A. Cabana [Cabana], Unknown Leonard, Unknown Victorianna, Unknown Cooper, Guin, Unknown Corso and Unknown Tracy [Defendants] for summary judgment [75] filed in this case. The Court, being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds as follows.

### STATEMENT OF THE CASE

Ladale Airosteve Holloway [Holloway] filed this *pro se* Complaint on February 23, 2012, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while incarcerated in the Harrison County Adult Detention Center [HCADC] during December 2011 and January 2012. [1.] Specifically, Holloway alleges a violation of his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause, and deliberate indifference to a serious medical need. [1, p. 4.]

Holloway was arrested on October 24, 2011, and transported to the HCADC. [77-1, p. 3; 77-8, p. 4.] Holloway had a pre-existing medical condition, a hernia, which he stated at the time of his arrest he had been dealing with for a year. [77-1, p. 3; 77-8, p. 25.] According to Holloway, the hernia ruptured in 2008, and he was treated at Gulfport Memorial Hospital for the condition. [77-1, p. 4.] Holloway did not have surgery for the hernia, and self treated the hernia after his

release from the hospital. [77-1, pp. 23-25.]

When he arrived at HCADC he was initially placed in an upper bunk, but was later moved to a bottom bunk after he notified the sergeant that he needed to be moved to a bottom bunk. [77-1, pp. 7-8.] Holloway was examined on December 8, 2011, and the doctor determined that Holloway should have surgical repair of the hernia. [77-9, p. 8.] He was prescribed pain medication, and was placed in the medical unit in DF section. [77-1, p. 9; 77-8, p. 31.] On December 26, 2011, Holloway was moved from the DF unit to the medical department. [77-1, p. 10.]

Holloway's surgery was December 27, 2011, and he was returned to the medical department after his surgery. [77-8, p. 24.] He was released from the medical department on December 28, 2011; the doctor's orders dated December 28, 2011, indicated that Holloway was to be housed in DF. [77-8, p. 32.] A doctor's order signed by T. Coulter, M.D. and dated January 4, 2012, provides as follows: House this patient in DF 1 month, bottom tier, bottom bunk. [77-8, p. 32.] A later order dated March 2, 2012, provides that Holloway should be housed in DF, bottom bunk. [77-8, p. 33.] Holloway contends that he was under doctor's orders to be housed on the bottom rack and tier, in spite of being released without restriction. [77-1, p. 10.]

Beth Victoriano [Victoriano] states that she held the position of shift sergeant for the period December 31, 2011, and ending January 1, 2012, at the HCADC. [77-6, p. 1.] According to Victoriano, the HCADC was on lock down at that time, and all inmates were required to be in their cells and bunks during lock down. [77-6, pp. 1-2.] Holloway was outside of his assigned area, and became verbally abusive when he was asked to return to his bunk. [77-6, p. 2.] In an effort to restore order to the area when Holloway allegedly refused to comply with remaining in

his area during the lock down, she and Steve Gwin began inquiring about the possibility of moving Holloway to a cell. (*Id.*) According to Victoriano, she confirmed with a nurse that Holloway could be located in the top tier. (*Id.*) When Holloway resisted the move, he was carried to cell #242 in the top tier. [77-6, p. 3.]

Victoriano's incident report provides that Holloway stated that he was to remain in the day room under the instructions of the medical department, and Victoriano responded "I informed him that we had already confirmed with medical that he was just bottom bunk restricted." [77-6, p. 6.] She reported that Holloway allegedly pulled the toilet off the wall and broke it in pieces after being moved into the cell. (*Id.*) Holloway was removed from that cell, seen by medical, and later rehoused in B block, D section, cell #130. (*Id.*)

According to Lieutenant Earl Leonard [Leonard], shift supervisor at the time of the December 31, 2011, incident involving Holloway, he was alerted to a need for help with a disruptive inmate located in D-Block, F-Section. [77-2, p. 1.] Leonard went to the area, and found Holloway on his "boat" in the day room. [77-2, p. 2.] Leonard talked to Holloway in an effort to get him to comply with the need to conform to the lock down orders, and when Holloway still refused to comply, Leonard ordered Holloway to move to a cell in the top tier of the detention center. (*Id.*) Holloway refused to comply with this order, and became passively resistant by turning on his side. (*Id.*) Holloway indicated he was not going to move to the other cell as directed. (*Id.*)

Leonard then asked the officers present to escort Holloway to cell 242 in the top tier of the facility. (*Id.*) Holloway refused to stand up for the officers and walk; he became dead weight which required that the officers carry Holloway to the cell. (*Id.*) Once Holloway was placed in

the cell, he destroyed the toilet in the cell. (*Id.*) Leonard saw that the toilet was wrenched from the wall and shattered in pieces on the cell floor. (*Id.*) Holloway admitted to destroying the toilet, and was moved to another cell after he was seen by medical staff. [77-2, p. 3.]

Leonard contends that the officers used the minimum force necessary to maintain order and security at the jail, for the safety of the officers and inmates. (*Id.*) Leonard included a copy of HCADC policies and procedures regarding the appropriate "response to resistance" to use in situations at the facility. [77-2, pp. 5-24.]

Frederick Corso [Corso], a deputy on duty at HCADC on December 31, 2012, averred that he helped Victoriano, Cooper and Gwin escort Holloway up to cell #242 after Holloway refused to move on his own. [77-5, p. 2.] Gwin averred that he assisted in the incident involving Holloway on December 31, 2012, and contacted the nurse regarding any restrictions in housing Holloway due to Holloway's medical condition. [77-7, p. 2.] Gwin helped carry Holloway to the cell, and noted that at times Holloway would grab a rail and resist being carried. [77-7, p. 3.] Holloway was O.C. sprayed, to cause him to release the rail. (*Id.*) Holloway was placed on the floor of the cell, and later destroyed the toilet in the cell. (*Id.*) Holloway was later evaluated by medical. (*Id.*; Exh. 2.)

### STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th

Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes. *Stafford v. True Temper Sports*, 123 F.3d 291, 295-6 (5th Cir. 1997).

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To survive summary judgment, the party opposing summary judgment must "go beyond the pleadings" and bring forth evidence demonstrating the existence of a triable issue of fact. *See Anderson*, 477 U.S. at 247-8; *Whitt v. Stephens County*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

## ANALYSIS

At the time of his incarceration at the HCADC, Holloway was a pretrial detainee with constitutional rights to medical care and safety guaranteed under the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979). The protections of the Eighth Amendment against cruel and unusual punishment are, however, limited in scope to convicted prisoners and do not apply to pretrial detainees such as Holloway. *See Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977). Accordingly, the Court finds that the plaintiff's claims advanced under the Eighth Amendment against these defendants should be

dismissed.

I.      Supervisory Liability

The Court finds that the credible evidence simply does not support a finding that Brisolara or Cabana were involved in any of the incidents which Holloway contends violated his constitutional rights. Holloway makes no claims that either Brisolara or Cabana were personally involved in any of the events he alleges. The only place Holloway uses either Brisolara's or Cabana's name is in identifying the Defendants, and a statement that he is suing each defendant who "participated in the cruel and unusual punishment inflicted, deliberate indifferences [sic] going against (doctor's orders) and the sheriff, warden and nurse for up-helding [sic] those who violated my (Eighth and Fourteenth Amendment Rights!)". [1, 10, p. 1.] Holloway fails to make any allegation that either Brisolara or Cabana played a role in policy making or that any policy led to Holloway's alleged injuries. Holloway provides no proof that an official policy existed which resulted in the alleged violation of his constitutional rights. In addition Holloway has yet to respond to the Defendants' Motion for Summary Judgment.

A plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein,* 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir. 1992)). Supervisory officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987). Mere negligence or oversight is not enough to support a claim under Section 1983. *Daniels v. Williams,* 474 U.S. 327, 328 (1986). Holloway has asserted nothing to

support his claim that some policy condoned the type conduct as alleged by Holloway against these defendants.

Holloway stated that he did not complain to Brisolara or Cabana about the incident or any ensuing pain allegedly resulting from the incident. [77-1, pp. 14-16.] Holloway admits that he merely named Brisolara and Cabana as defendants because they were supervisors of the other named defendants in the lawsuit. (*Id.*) The Court concludes that any claims advanced against Brisolara or Cabana acting in their individual capacity in this lawsuit should be dismissed.

In addition, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti,* 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978). Plaintiff has failed to establish that the HCADC had a policy, custom or practice that was the "moving force" behind the alleged constitutional violations. *See Monell,* 436 U.S. at 694. Based on these principals, the Court finds that Plaintiff's claims against Brisolara and Cabana in both their individual and official capacities should be dismissed with prejudice.

II.     Deliberate Indifference to Serious Medical Need

"[P]retrial detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001), *citing Estelle v. Gamble,* 429 U.S. 97 (1976); *see also Reeves v. Collins,* 27 F.3d 174,

176-7 (5th Cir. 1994). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006). Unsuccessful or negligent medical treatment and medical malpractice, if any, do not constitute deliberate indifference, nor does a prisoner's disagreement with their medical treatment, absent exceptional circumstances. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir. 2003).

Holloway contends that he was assigned to the DF until released by the doctor, following his hernia surgery. [10, p. 1.] He claims that on December 31, 2011, Leonard, Cooper, Victoriano, Gwin and Corso, along with other officers, tried to force him to move upstairs on a top rack "for no justifiable reason." (*Id*.) He claims the officers grabbed his arms and legs, forcing him upstairs and slamming him on the floor. (*Id*.) He contends that these individuals acted in violation of his Eighth and Fourteenth Amendment rights by acting with deliberate indifference, participating in cruel and unusual punishment and ignoring the doctor's orders. (*Id*.)

It is assumed for the purposes of this motion that plaintiff's hernia was a serious medical need. Plaintiff's § 1983 claim for deliberate indifference to a serious medical need fails, however, because he cannot establish that defendants were, in fact, deliberately indifferent to that need. The record does not establish that plaintiff's medical care was inadequate. Holloway's hernia was noted at the time he was booked into the HCADC. [77-8, p. 25.] He was evaluated by the doctor and assigned a bottom bunk, bottom tier, if available, because of the hernia. [77-8, p. 29.] He was treated periodically for his condition and set for a surgical consult after the Thanksgiving holiday.

[77-8, p. 30.] Plaintiff also cannot establish that there was an actionable delay in obtaining his surgery. An inmate who had been examined by medical personnel on numerous occasions fails to set forth a valid showing of deliberate indifference to serious medical needs. *Spears v. McCotter,* 766 F.2d 179, 181 (5th Cir. 1985).

The named defendants were not responsible for decisions regarding his medical care. In addition, before any action toward moving Holloway took place during the incident which occurred on December 31, 2011, Victoriano called the nurse to determine what, if any, restrictions were on housing Holloway. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009). Holloway does not show that the officers were aware, or should have been aware, of any substantial risk to his health. *See Gibbs v. Grimmette,* 254 F.3d 545, 550 (5th Cir. 2001), *cert. denied* 534 U.S. 1136 (2002). The officers checked with the nurse to determine the applicable treatment for Holloway before acting. These actions do not rise to the level of "wanton disregard for [Holloway's] serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, a prison inmate can demonstrate an Eighth Amendment violation by showing that "prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir. 2012). None of this behavior was present in the circumstances surrounding Holloway's claims and the Court finds that his claim of deliberate indifference to serious medical needs should be dismissed.

III.   Excessive Force

Whenever prison officials stand accused of using excessive physical force for the purpose of institutional security by a pretrial detainee, the appropriate analysis is as follows: whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). The defendants claim that their actions were necessary to restore order to the day room area, because of Holloway's disruptive activity. Holloway refused to walk so he was picked up and carried to the other cell. Holloway was not injured in this activity; he was taken to the nurse for examination right after the incident in which Holloway removed a toilet from the wall and broke it on the cell floor, and she stated that he was fine. [77-1, p. 29.] No injuries to Holloway were reported by the nurse. (*Id.*)

Holloway claims that the officers used excessive force against him which is properly considered as a claim of a violation of his substantive due process rights under the Fourteenth Amendment. *Petta v. Rivera,* 143 F.3d 895, 911 (5th Cir. 1998). Under the Fourteenth Amendment standard, the court must consider whether the defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." *Petta,* 143 F.3d at 902; *see Valencia*, 981 F.2d at 1446. Holloway is required to show that he suffered at least some form of injury. *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001). If the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is *de minimis* for constitutional

purposes." *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 1999).

Holloway refused to obey the orders of officers to get into his bunk and remain there during the lock down. [77-1, pp. 17-25.] He admitted that he chose to violate the rules on occasion. [77-1, p. 2.] This behavior created a security risk and threat to order that required a response. [77-6, p. 2.] He admitted to breaking the toilet in the cell after he was carried upstairs to the cell. Ultimately, the officers applied an amount of force that was necessary and reasonable for the purpose of stopping the altercation. [77-6, pp. 2-3, 5-6.] Holloway offers no evidence of an injury from the incident at issue, and the nurse that examined Holloway did not outline any injuries suffered as a result of this incident. In addition, Holloway does not show that the actions taken were done with malice. The Court finds that Plaintiff's claim does not show the magnitude or aberrant nature of excessive force necessary to meet the constitutional standard, and further concludes that these claims should be dismissed on summary judgment. *See Siglar v. Hightower,* 112 F.3d 191, 194 (5th Cir. 1997).

IV.     Official Capacity Claims

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability under section 1983 against a governmental agency requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), *cert. denied* 534 U.S. 820; *Monell*, 436 U.S. at 694. "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell*, 436 U.S. at 691. An official policy is necessary as a predicate to recovery under a theory of municipal liability:

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Kohler v. Englade,* 470 F.3d 1104, 1115 (5th Cir. 2006).

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right.") Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."  *Lawson*, 286 F.3d at 264.

Based on the foregoing analysis, the Court finds that Holloway's Complaint fails to establish that a policy or custom on the part of the HCADC was the moving force behind any alleged constitutional violations. Furthermore, the Court finds that Holloway's allegations do not indicate that he was treated with deliberate indifference to a serious medical need or was a victim of the application of excessive force. Thus, the Court concludes that there is basis for Holloway's

claims against the Defendants in their official capacities, and further concludes that those claims should be dismissed.

V.      Qualified Immunity

Holloway seeks to impose liability against the Defendants in their individual capacities for the allegedly unconstitutional conditions at the HCADC. Because these Defendants are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986), *cert. denied* 483 U.S. 1021 (1987). The Court must first determine whether the plaintiff has established a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The burden of rebutting the defense of qualified immunity lies with the plaintiff. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). "The qualified immunity inquiry consists of two prongs: (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009). As discussed above, Holloway has failed to establish a violation of his constitutional rights in the allegations of his complaint. The Court finds that the Defendants should be granted qualified immunity for claims advanced against them in their individual capacities.

VI.     State Law Claims

The Defendants, in their official capacity, argue that MISS. CODE ANN. § 11-46-9 (1972) bars any recovery Holloway may seek under Mississippi law. The Mississippi Tort Claims Act exempts governmental entities and their employees "acting within the course and scope of their employment or duties" from liability for certain kinds of claims. MISS. CODE ANN. § 11–46–9(1).

Under the Act, a governmental entity is not liable to any claimant who, at the time the claim arises, is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether the claimant is or is not an inmate when the actual claim is filed. MISS. CODE ANN. § 11–46–9(1)(m). The Court agrees with the Defendants and finds that any claims Holloway raises under Mississippi State law against the Defendants are barred by provisions of the Mississippi Tort Claims Act.

## Conclusion

For the reasons set forth above, this Court finds that the Defendants' motion for summary judgment [75] on the claims advanced by Holloway against these Defendants should be granted. The Court further finds that the motion for qualified immunity by the Defendants for any claims brought against them in his individual capacity should be granted. A separate judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date. A copy of this Memorandum Opinion and the judgment shall be mailed by certified mail, return receipt requested to Holloway at his last known address of record. Each party shall bear their respective costs associated with this motion.

DATED, this the 26th day of July, 2013.

s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE
